IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

ROBERT D. PARSONS,

    Plaintiff,

V.                                   CIVIL ACTION NO. 3:04-0583

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

## **FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on February 3, 2003, alleging disability commencing September 17, 2002, as a consequence of Crohn's disease, arthritis, back problems, foot problems and nerves. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found him not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was fifty years of age and had obtained a high school education. His past relevant employment experience consisted of work as

a cashier, shipping clerk, field service representative, pump attendant, assembler, laborer and maintenance man. In his decision, the administrative law judge found that plaintiff suffered from "Crohn's disease with polyarthralgias particularly affecting his knees, dysthymia, a generalized anxiety disorder, and a schizoid personality disorder," impairments he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.13 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff has a long history of Crohn's disease and, according to treating physician Charles Turner, he had a total of five surgeries related to it with the last in 1986. The record contains reports from this physician beginning in September of 2001 and continuing through October 7, 2003, and he has consistently noted that plaintiff has had no complaints in this regard and that this condition has remained stable. Plaintiff did testify that he has to use the restroom about five times per day and the administrative law judge found that any jobs he could perform needed to be located near a bathroom. While plaintiff also indicated that his Crohn's disease is accompanied by foul smelling gas, it is observed that he did not report this problem to Dr. Turner nor to the Commissioner's consultative examiner. Plaintiff also testified that stress will aggravate this condition and the administrative law judge found that he could perform only low stress type jobs.

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404 Subpart P, Appendix 2, Table No. 2.

Plaintiff also alleges he experiences significant joint pain related to his inflammatory bowel disease; however, the evidence does not support such a connection. A September 13, 2001report from Dr. Turner refers to plaintiff having received injections in his knees which he testified was necessary every two to three years due to pain. In December of 2001, it was noted that he had foot pain secondary to what Dr. Turner believed was plantar fasciitis. He was going to refer plaintiff to a podiatrist, but nothing more is mentioned in his notes. Foot pain was again reported in January of 2002, along with complaints of back pain, but exam showed no tenderness in the back, negative straight leg raising, and good circulation in the feet. Plaintiff was diagnosed with stable osteoarthritis and the pain medication he took on a continuing basis, which had run out, was restarted. In the next report, dated October 30, 2002, Dr. Turner relates that plaintiff needed "very little" Tylenol 3 or 4 for his arthritis. On February 19, 2003, plaintiff reported that he was performing janitorial work at Marshall University. Although the work had been going well, he was too slow moving from building to building due to joint stiffness and had been let go from this job. Exam revealed some stiffness of the hips and knees.

In light of plaintiff's complaints, Dr. Turner referred him to Dr. William Dennison, a specialist in rheumatology. Plaintiff reported to this physician that he experienced increasing pain with activity during the day but that it did not bother him at night. Exam revealed "perhaps" a "mild" enlargement of the knees without evidence of pain or swelling over any other joints. Dr. Dennison concluded that plaintiff's symptoms sounded more like possible degenerative arthritis rather than being directly related to inflammatory bowel disease. He doubted, however, that plaintiff had any significant arthritis in his ankles to account for the pain he reported. He recommended continued trials of anti-inflammatory medication. In Dr. Turner's last report, dated October 7, 2003,

he related that plaintiff had injured his back after catching his mother to prevent her from falling. He provided no other details, however, and, as noted, plaintiff did not submit any further updates.

Dr. Rodolfo Gobunsuy performed a physical exam of plaintiff for the Commissioner on March 18, 2003, and observed him to be comfortable with sitting and lying down and to walk with a normal gait. Tenderness was detected from the L4 to S1 levels in the low back, and the knees were sore with some crepitation. The hips, ankles, feet and upper extremities were without abnormality and plaintiff was neurologically intact, being able to walk on his heels and toes and to stand on one leg. He did have difficulty with heel to toe tandem walking and with squatting. An X-ray of the lumbar spine was interpreted as normal and range of motion was recorded as being nearly full in the knees and lumbar spine.

In his testimony, plaintiff reported pain mainly in his knees and back which limited standing and walking, although he indicated he could stand for up to an hour at a time and walk about six city blocks as well as perform a number of other activities such as cutting the grass, collecting aluminum cans for recycling, changing the oil in his car, cooking, washing dishes and laundry and some cleaning. He indicated he continued to take pain medication without side effects and required cortisone injections in his knees only every two to three years. Neither Dr. Gobunsuy nor Dr. Turner assessed plaintiff's work-related limitations, but a nonexamining state agency medical advisor concluded there were no physical limitations.

The administrative law judge, after considering all of the evidence, determined that plaintiff could perform work at the light exertional level with an ability to sit six hours, changing positions up to two times every thirty minutes, and stand and walk up to six hours. Due to knee pain, he found plaintiff limited in his ability to bend, kneel and squat. As noted, due to Crohn's

disease plaintiff needed to be in close proximity to a bathroom and could only perform low stress jobs. These findings are clearly supported by the substantial evidence in the record.

Plaintiff received treatment at the Prestera Center for depression, diagnosed in April of 2000 as major depression, recurrent, moderate, and for anxiety, diagnosed as generalized anxiety disorder. He was maintained on medication, apparently with some success as he reported at an annual psychiatric review on March 23, 2001, that his mood was stable and his anxiety had decreased. He also had no complaints and reported that medication eliminated his depressive and anxiety symptoms. He was assessed as having no functional impairment and assigned a Global Assessment of Functioning ("GAF") of ninety, consistent with "absent or minimal symptoms ... good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns... ."[3] Though plaintiff reported at the March 4, 2002 annual psychiatric review that he was experiencing increased stress due to financial problems resulting from decreased work hours, he was again considered to have no functional impairment and a GAF of ninety. Similar findings were made through December 10, 2002.

In March of 2003, a new psychosocial history was taken and plaintiff given a provisional diagnosis of major depression, recurrent, moderate, and generalized anxiety disorder. His GAF was rated at sixty-five, consistent with mild symptoms or "some" difficulty in social or occupational functioning "but generally functioning pretty well, has some meaningful interpersonal

---

[3] Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

relationships."[4]  It is noted that plaintiff had been off his medication for three months at the time of this evaluation.  At an "initial" psychiatric evaluation on March 21, 2003, plaintiff was cooperative but displayed a dysthymic mood and restricted affect.  His medications were started again and his prognosis was considered good with treatment.  In a report from August 7, 2003, the most recent from Prestera, plaintiff was described as doing well and fairly stable on his medications.

Dr. David Frederick performed a consultative psychological evaluation on March 12, 2003.  Plaintiff told him he was applying for jobs and had an interview in three days.  Mental status exam revealed that plaintiff was well motivated and interacted well even though he had a "very mildly" anxious mood and mildly flat affect.  While judgment was considered mildly deficient, concentration moderately deficient and insight poor, memory was within normal limits.  I.Q. testing produced a full-scale score of eighty-nine with academic achievement consistent with intellectual functioning.  Dr. Frederick diagnosed schizoid personality disorder,[5] dysthymic disorder and anxiety disorder.  As he did other places in the record, plaintiff reported a number of daily activities.  This examiner did not assess plaintiff's residual functional capacity, however, state agency reviewers concluded there was not a severe mental impairment established.  The administrative law judge did not give significant weight to this opinion, instead finding that plaintiff would be limited to low stress jobs entailing simple, repetitive routines not requiring sustained concentration and attention. While the evidence does establish depressive and anxiety problems, as the administrative law judge

---

[4] Id.

[5] The essential feature of this disorder is a "pervasive pattern of detachment from social relationships and a restricted range of expression of emotions in interpersonal settings." Id. at 638.

observed, it also reveals that they were treated successfully with medication which eliminated virtually all symptoms. The Court concludes that substantial evidence supports these findings.

While plaintiff alleged significant limitations on his activities due to pain and depression/anxiety, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that plaintiff was "an essentially honest individual" but his testimony as to the limitations he experienced was not fully credible. He found persuasive the successful treatment of plaintiff's anxiety and depression with medication, his continued efforts to find work despite alleging he was disabled and his extensive activities of daily living. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

**RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED:  August 1, 2005

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE